IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 10-0226-WS |
| | ) | |
| LUIS CORONEL VEGA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on the defendant's motion to dismiss due to improper venue or, in the alternative, to change venue to the Central District of California. (Doc. 22). By previous order,[1] the Court found venue to be proper as to Count One (the conspiracy count), ordered additional briefing as to Count Three (the substantive count), and denied the motion to change venue. (Doc. 28). The parties have submitted their supplemental briefing, (Docs. 33, 34), and the motion is ripe for resolution.

## BACKGROUND

Count Three charges the defendant with knowingly conducting and attempting to conduct a financial transaction, specifically, a wire transfer of $275,000, which involved the proceeds of a specified unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. The government's proffer reflects in relevant part that the defendant delivered $275,000 in cash to an undercover ICE agent in Los Angeles and that Los Angeles ICE wired the money to the Mobile ICE office the next day.

---

[1] *United States v. Vega*, 2011 WL 3209127 (S.D. Ala. 2011).

[1]

The defendant argues variously that: (1) his only acts occurred in the Central District of California, where he delivered the cash; (2) the government "created" venue in this District by wiring the funds here; and (3) the defendant did not know, and could not foresee, that the funds would be so transferred. (Doc. 22 at 1-2; Doc. 27 at 2-3, 7; Doc. 34 at 1-4).

## DISCUSSION

The burden is on the prosecution to prove venue. *United States v. Schlei*, 122 F.3d 944, 974 (11th Cir. 1997).

### A. Offense Occurring in This District.

"The Trial of all Crimes … shall be held in the State where the said Crimes shall have been committed …." U.S. Const. art. III, § 2, cl. 3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed …." *Id*. amend. VI. Consistent with the Constitution, the Rules of Criminal Procedure provide that, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

For purposes of determining where the offense was committed, "the locus delicti [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (internal quotes omitted). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id*. The verbs used in the statute represent a "valu[able] … interpretative tool," but there may in a given case be "other relevant statutory language," that is, language revealing other "essential conduct elements." *Id*. at 280.

Section 1956(a)(1)(B)(i) penalizes one who, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction, which in fact involves the proceeds of specified unlawful activity … knowing that the transaction is designed in whole or in part … to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity …." The only apparent essential conduct element is that of conducting or attempting to conduct a financial transaction. *See United States v. Cabrales*, 524 U.S. 1, 7 (1998) (the statute "interdict[s] only the financial transactions …, not the anterior criminal conduct that yielded the funds allegedly laundered"); *United States v. Stewart*, 256 F.3d 231, 243 (4th Cir. 2001) ("The financial transactions underlying Livingston's money laundering offenses are essential conduct elements of the offenses."); *see also United States v. Tarkoff*, 242 F.3d 991, 994 (11th Cir. 2001) (listing the elements of the offense).

A "transaction" includes a transfer, 18 U.S.C. § 1956(c)(3), and the indictment alleges a transfer, specifically a wire transfer. A "financial transaction" includes an interstate wire transfer, *id*. § 1956(c)(4)(i), which the indictment alleges. A defendant "conducts" a financial transaction by "initiating, concluding, or participating in initiating, or concluding a transaction." *Id*. § 1956(c)(2). This apparently includes "participat[ing] in a transaction at any point." Eleventh Circuit Pattern Jury Instruction (Criminal), Offense Instruction 74.2; *see also Tarkoff*, 242 F.3d at 995 (a defendant conducts a financial transaction if he participates in it).

Since the only financial transaction the indictment charges is the wire transfer of $275,000 from California to Alabama, venue lies in this District under the *Rodriguez-Moreno* test only if the defendant participated in that wire transfer and did so in this District. The indictment charges that the defendant conducted or attempted to conduct the wire transfer from California to Alabama, but the government's factual proffer concedes that Los Angeles ICE made the wire transfer, a day after its agent picked up the money from the defendant. (Doc. 25 at 5). The government has offered no construction

[3]

of "conduct" or "participate" that would extend their reach to transactions that are not undertaken until a day after the defendant's involvement with the funds has ended. On the contrary, the government concedes that the defendant "may not be accountable for participating in a substantive offense." (Doc. 33 at 3).

Instead, the government notes that the defendant is also charged in Count Three as an aider and abettor. (Doc. 33 at 4-5). Liability as an aider and abettor requires that "the substantive offense was committed by someone." *United States v. Frazier*, 605 F.3d 1271, 1279 (11th Cir. 2010). The government does not assert that an ICE agent committed the crime of money laundering but points to the defendant's unindicted co-conspirators. (Doc. 33 at 3-4, 5). "[A]n aider and abettor may be tried in the district in which a principal committed the offense …." *United States v. Long*, 866 F.2d 402, 408 (11th Cir. 1989). Thus, if a co-conspirator participated in the wire transfer from California to Alabama, and if he did so in this District, then venue presumably is proper as to the defendant.[2] The defendant does not argue otherwise.

The government asserts that "there were other conspirators participating in the commission of … the overt act alleged in Count Three." (Doc. 33 at 3). It is not clear that the government actually has evidence establishing such participation, since all it says is that the transfer from California to Alabama "was in keeping with the scheme devised by" the co-conspirators. (*Id.*). Nor is it clear that the government is focused on the wire transfer to Alabama – which is the only financial transaction made the subject of Count Three – since it repeatedly (but irrelevantly) stresses that the subsequent transfers from the Alabama account to other places were directed by the co-conspirators. (*Id.* at 2, 3, 4, 5, 7).[3] The defendant does not object that the government has no evidence with which to

---

[2] To resolve the instant motion, the Court need not decide whether, in order to establish venue as to the defendant, the government must also prove by a preponderance of the evidence the other elements of the substantive offense as to the principal.

[3] The indictment charges that the defendant conducted "a wire transfer of $275,000," on or about October 21, 2009. (Doc. 8 at 2-3). The defendant is thus charged with only a single
(Continued)

[4]

prove a co-conspirator's participation in the wire transfer to Alabama and, at any rate, "[i]t would not [be] proper for the district court to find the appropriate venue in a pretrial evidentiary hearing." *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010).[4] The Court thus assumes for present purposes that the government is prepared to show at trial that one or more co-conspirators participated in the wire transfer to Alabama. The question becomes whether any such participation establishes venue in this District as to the principal and hence as to the defendant.

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a) (first paragraph). Moreover, "[a]ny offense involving … transportation in interstate or foreign commerce … is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce … moves." 18 U.S.C. § 3237(a) (second paragraph). The government invokes both paragraphs of Section 3237(a). (Doc. 33 at 1-2).

The Supreme Court has indicated that money laundering could fall within this statute "if the launderer acquired the funds in one district and transported them into

---

wire transfer, one in the amount of $275,000 and occurring on or about October 21, 2009. A wire transfer of this magnitude occurred only once, on October 21, 2009, from California to Alabama. (Doc. 25 at 5). None of the subsequent wire transfers from the Alabama account was in the amount of $275,000, and the largest was only $54,711. (*Id*. at 5-6).

[4] The government suggests, belatedly, that *Snipes* precludes any pretrial examination of venue. (Doc. 33 at 7). As this Court has recently noted, *Snipes* does not "rule that a trial court cannot make a legal evaluation of venue before trial based on an agreed or undisputed statement of facts." *United States v. Ayo*, ___ F. Supp. 2d ___, 2011 WL 3511012 at *3 (S.D. Ala. 2011). The Court's assessment of venue herein remains within these confines.

another." *Cabrales*, 524 U.S. at 8; *see also id*. at 9; *Stewart*, 256 F.3d at 243-44 (money laundering was a continuing offense under the circumstances). In a related context, numerous Courts of Appeal have described wire fraud as falling within Section 3237(a). *See United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005); *United States v. Ebersole*, 411 F.3d 517, 527 (4th Cir. 2005); *United States v. Pace*, 314 F.3d 344, 350 (9th Cir. 2002); *United States v. Kim*, 246 F.3d 186, 191-93 (2nd Cir. 2001); *United States v. Goldberg*, 830 F.2d 459, 465 (3rd Cir. 1987). As the defendant does not question that Section 3237(a) applies to the offense as charged under Section 1956(a)(1)(B)(i), the Court assumes for present purposes that it does apply.

Under either paragraph of Section 3237(a), then, the wire transfer begun in California continued until it concluded in this District. Thus, the offense of conducting or attempting to conduct a prohibited financial transaction occurred in this District as well as in the Eastern District of California. Should the government at trial establish that a co-conspirator, as a principal whom the defendant aided and abetted, participated in the wire transfer at any point, Section 3237(a) would bestow venue as to the defendant in this District with respect to Count Three.

In addition to its aiding-and-abetting theory, the government also grounds venue on vicarious liability under *Pinkerton*. (Doc. 33 at 4-5).[5] The *Long* Court declined to address whether venue could be based on such a theory, since venue was proper under an aiding-and-abetting theory. 866 F.2d at 408 n.1. Since, as in *Long*, the government may proceed to trial on an aiding-and-abetting theory of venue, the Court likewise declines to consider the government's alternative argument.[6]

---

[5] *Pinkerton* has been applied in the money-laundering context. *See, e.g., United States v. Silvestri*, 409 F.3d 1311, 1336 (11th Cir. 2005).

[6] The Court does note that *Pinkerton* requires the government to prove that a co-conspirator committed the substantive offense. *E.g., Silvestri*, 409 F.3d at 1335. Thus, the government could not establish venue under this theory without establishing that a co-conspirator participated in the wire transfer from California to Alabama.

The government apparently intends to advance a third theory, one of "co-conspirator liability." (Doc. 33 at 8). The Court cannot from the government's briefing distill a clear argument concerning such a theory, distinct from those of aiding-and-abetting and vicarious liability under *Pinkerton*. As with the government's *Pinkerton* theory of venue, it is unnecessary to address any separate "co-conspirator liability" theory of venue, since the government's aiding-and-abetting theory survives the defendant's motion to dismiss.

### B. Knowledge and Foreseeability.

Criminal liability under an aiding-and-abetting theory requires proof that the defendant intended to aid in the commission of the substantive offense by the principal. *Frazier*, 605 F.3d at 1279. To the uncertain extent this may suggest that the government must prove the defendant was aware the funds would be wire transferred to Alabama, as discussed in Part A the Court cannot find disputed facts concerning knowledge in advance of trial, and the government disputes the defendant's ignorance. (Doc. 33 at 8).[7]

### C. Manufactured Venue.

The defendant asserts that the government "created venue in this district by wiring funds to a bank in this district without the knowledge, participation or acquiescence of the defendant; and these actions were not reasonably foreseeable to the defendant." (Doc. 22 at 2). It is not clear from this unadorned statement whether the defendant alleges that the government impermissibly manufactured venue in this District. Assuming without deciding that he does so, any such argument fails.

The idea that the government can go too far in structuring events in order to obtain venue in a particular district has received a chilly reception in the appellate courts. *See*

---

[7] Under *Pinkerton*, the defendant's ignorance of the substantive offense is irrelevant, but the offense must have been reasonably foreseeable. *Silvestri*, 409 F.3d at 1335.

*United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 462 (7th Cir. 2006) (rejecting a doctrine of "venue manipulation"); *United States v. Al-Talib*, 55 F.3d 923, 929 (4th Cir. 1995) ("There is no such thing as 'manufactured venue' or 'venue entrapment.'"); *see also United States v. Rommy*, 506 F.3d 108, 127 (2nd Cir. 2007) (expressing skepticism but not reaching the issue). The proper recourse, according to the Seventh Circuit, is to seek a transfer of venue under Rule 21(b). *Rodriguez-Rodriguez*, 453 F.3d at 462.[8]

The Eleventh Circuit apparently has not decided whether to recognize a doctrine of manufactured venue. It has, however, indicated that any such doctrine would require the defendant "to show that the government orchestrated the undercover operation in order to create venue." *United States v. Dabbs*, 134 F.3d 1071, 1079 n.10 (11th Cir. 1998). The defendant has not attempted to meet this burden, and the government's factual proffer makes it doubtful he could do so. According to the proffer, the investigation leading to the pending indictment began when a confidential informant working with ICE notified agents in Mobile that he had been contacted by two money brokers in Colombia who were attempting to launder drug proceeds being held in California. (Doc. 25 at 1). In this context, it would appear reasonable for the Mobile office, as the office to which the initial information was presented, to handle the investigation.

Against this legal and factual backdrop, the defendant's failure to offer any argument or authority in support of a challenge to manufactured venue requires rejection of his position.

### D. Conspiracy Count.

In his most recent brief, (Doc. 34 at 5), the defendant seeks reconsideration of the Court's ruling that "[v]enue as to the conspiracy count unquestionably lies in the

---

[8] The defendant here did seek such a transfer, but the Court denied that relief due to the defendant's failure to shoulder his burden. (Doc. 28 at 5-6).

Southern District of Alabama." (Doc. 28 at 4). The request is based on the defendant's newly articulated position that he was not aware of any co-conspirators other than the confidential informant and that the confidential informant joined the conspiracy after, not before, he became a government agent. (Doc. 34 at 5). The opposite of these facts is not expressed in the government's factual proffer, so the defendant's failure to challenge that proffer does not foreclose him from advancing these points now. Whatever the significance of these alleged facts to venue, the defendant has not shown that the government agrees with them, and they thus cannot form the basis of a pretrial ruling on venue. The motion to reconsider as to Count One is **denied**.

## CONCLUSION

The propriety of venue in this District as to Count Three remains uncertain, especially considering the government's failure to identify evidence that could support a conclusion that the defendant or any co-conspirator participated in the charged wire transfer from California to Alabama. Nevertheless, because challenges to venue that depend upon an unsettled factual record must be resolved at trial, not beforehand, the defendant's motion to dismiss due to improper venue must be **denied**, without prejudice to the defendant's ability to challenge venue at trial.

DONE and ORDERED this 25th day of August, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE